# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **SECURE MATRIX LLC,** | |
| **Plaintiff,** | **Civil Action No: 2:24-cv-01083** |
| **v.** | **PATENT CASE** |
| **COBURN SUPPLY COMPANY, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## DEFENDANT COBURN SUPPLY COMPANY, INC.'S RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

III. STATEMENT OF THE ISSUE ..................................................................................... 2

IV. STATEMENT OF FACTS ............................................................................................. 2

V. LEGAL STANDARD ..................................................................................................... 5

    A. This Case Should Be Dismissed Under Rule 12(b)(6) ......................................... 5

    B. The Law of 35 U.S.C. § 101 ................................................................................ 6

VI. ARGUMENT ................................................................................................................. 7

    A. Claim 1 of the '116 Patent Is Representative of All Claims. .................................. 7

    B. *Alice* Step One: Claim 1 of the '116 Patent Is Directed to the Abstract Idea of Authentication. ..................................................................................................... 9

    C. *Alice* Step Two: Claim 1 Contains No Inventive Concept. ................................. 13

    D. There Are No Claim Construction or Factual Disputes Preventing the Court From Ruling on This Issue at the Rule 12 Stage .......................................................... 15

VII. CONCLUSION............................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ................................................................................. *passim*

*Ancora Technologies, Inc. v. HTC America, Inc.*,
  908 F.3d 1343 (Fed. Cir. 2018) ................................................................................ 12

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016) .................................................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 5

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
  687 F.3d 1266 (Fed. Cir. 2012) ............................................................................. 5, 14

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ...................................................................... 9, 16, 17

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ........................................................................................ 5, 6, 7, 9

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ........................................................................... 13, 15

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ................................................................................ 14

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017) .................................................................................. 7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014) ......................................................................... 7, 8, 14

*Cuvillier v. Sullivan*,
  503 F.3d 397 (5th Cir. 2007) ..................................................................................... 5

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) .................................................................................. 6

*Diamond v. Chakrabarty*,
  447 U.S. 303 (1980) .................................................................................................... 6

*Diamond v. Diehr*,
    450 U.S. 175 (1981) ............................................................................................7

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    815 Fed. App'x 529 (Fed. Cir. 2020) ....................................................11, 17

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
    958 F.3d 1178 (Fed. Cir. 2020) ........................................................................11

*First-Class Monitoring, LLC v. Ups of Am., Inc.*,
    389 F. Supp. 3d 456 (E.D. Tex. 2019) ..........................................................17

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012) ........................................................................7

*Intellectual Ventures I LLC v. Capital One Bank U.S.A.*,
    792 F.3d 1363 (Fed. Cir. 2015) ......................................................................14

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ......................................................................14

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) ......................................................................13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ........................................................................................7

*Parker v. Flook*,
    437 U.S. 584 (1978) ............................................................................................7

*PersonalWeb Techs. LLC. v. Google LLC*,
    8 F.4th 1310 (Fed. Cir. 2021) ........................................................................16

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
    2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ...................8

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
    No. 2:18-cv-00007-JRG, 2019 WL 1317286 (E.D. Tex. Mar. 21, 2019)................8

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
    696 F. App'x 1014 (Fed. Cir. 2016) ..........................................................1, 10

*Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*,
    No. 2021-1906, 2022 WL794981 (Fed. Cir. 2022) ......................................11

*Riggs Tech. Holdings, LLC v Cengage Learning, Inc.*,
    No. 2022-1468, 2023 WL 193162 (Fed. Cir. Jan. 17, 2023)....................11

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)....................................................................................9, 16

*Sensormatic Elecs., LLC v. Wyze Labs, Inc.*,
  No. 2020-2320, 2021 WL 2944838 (Fed. Cir. July 14, 2021)................................................9

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)...............................................................................................12

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)......................................................5, 10

*Universal Secure Registry LLC v. Apple, Inc.*,
  10 F.4th 1342 (Fed. Cir. 2021) ....................................................................................1, 10, 11

*Yu v. Apple Inc.*,
  1 F.4th 1040 (Fed. Cir. 2021) ................................................................................................13

**Statutes**

35 U.S.C. § 101................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12..............................................................................................1, 2, 5

## I.    INTRODUCTION

Coburn Supply Company, Inc. requests that the Court dismiss this case because the claims of U.S. Patent No. 8,677,116 (the "'116 Patent") are directed to the abstract idea of authentication. The Federal Circuit has long held claims directed to authentication—like the claims at issue in this case—invalid under *Alice*. *See, e.g.*, *Universal Secure Registry LLC v. Apple, Inc.*, 10 F.4th 1342, 1352 (Fed. Cir. 2021) ("[T]he claimed 'encrypted authentication data' here is merely a collection of conventional data combined in a conventional way that achieves only expected results."); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2016) (holding the process of "(1) receiving identity data from a device with a request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources" is abstract). The asserted claims are not meaningfully distinguishable from the authentication-based claims the Federal Circuit previously found invalid.

Resolving this issue does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating an invalid patent, Defendant requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On December 30, 2024, Plaintiff Secure Matrix filed its Complaint for patent infringement, accusing Defendant of infringing the '116 Patent. Specifically, Secure Matrix alleges the log-in functionality on Defendant's website of infringement.

On March 7, 2025, Defendant filed a Motion for Judgment on the Pleadings, arguing that the claims of the '116 Patent are directed to an abstract idea and do not include an inventive

concept beyond that idea. ECF No. 10. Rather than respond to the Motion, Secure Matrix filed an Amended Complaint on April 4, 2025. ECF No. 14.

## III.    STATEMENT OF THE ISSUE

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The claims of the '116 Patent are directed to the abstract idea of authentication and do not include an inventive concept beyond that idea. Should the Court therefore dismiss Secure Matrix's claims pursuant to Rule 12(b)(6)?

## IV.    STATEMENT OF FACTS

The '116 Patent relates to a method for "for authenticating a user seeking to conduct at least one interaction with a secured capability provided by a computer." '116 Patent at Abstract. The '116 Patent explains that "[t]here is a growing need to authenticate users trying to access a secured internet portal (e.g., website) or a real-world secured device (e.g., lock, door) that can be actuated via the internet." *Id.* at 1:23–36. The '116 Patent further explains that, "with more and more consumer transactions occurring over the internet, the need for a secure and fast online electronic payment capability is also growing."

Representative claim 1 provides this authentication method:

1. A method of using a computer system to authenticate a user seeking to conduct at least one interaction with a secured capability provided by a computer, the method comprising:

using the computer system to receive a first signal from the computer providing the secured capability, the first signal comprising a reusable identifier corresponding to the secured capability, the reusable identifier assigned for use by the secured capability for a finite period of time;

using the computer system to receive a second signal from an electronic device being used by the user, the second signal comprising a copy of the reusable identifier and user verification information;

using a processor of the computer system to evaluate, based at least on the first signal and the second signal, whether the user is authorized to conduct the at least one interaction with the secured capability; and

in response to an indication from the processor that the user is authorized to conduct the at least one interaction with the secured capability, using the computer system to transmit a third signal comprising authorization information to at least one of the electronic device and the computer.

Plainly, the '116 Patent's claimed "advance" is authentication by (1) receiving a reusable identifier corresponding to a secured capability; (2) receiving a copy of the reusable identifier and user verification information; (3) determining whether a user is authorized to the secured capability; and (4) if authorized, transmitting authentication information. In capsule form, the '116 Patent claims routine authentication. At the end of the specification, the '116 Patent purports that, "[b]y using reusable identifiers that do not include user specific or transaction specific information, certain embodiments described herein can advantageously provide a universal login or universal payment application that can work on every website and can provide an exceptional user experience." *Id.* at 32:56-60. This apparently provides "a level of safety over a million times greater than systems that utilize just a login and password." *Id.* at 33:2-4. Yet, the specification concedes that the reusable identifier is merely "***a short sequence of numbers, letters, or characters*** that identifies the company providing the secured capability, the secured capability, or both." *Id.* at 8:58-61 (emphasis added).

The '116 Patent's purported method is carried out using conventional components. The applicants made this clear through their own language in the specification. For example, the specification makes the following concessions about the use of conventional devices and technologies:

- "While various embodiments are described herein by citing ***websites and smartphones as examples of devices which can be used***, the systems and methods described herein are not so limited. Certain embodiments also extend to ***bank safes, door locks, and any other objects that use some form of security***

*to access, and other forms of mobile personal devices (e.g., electronic tablets)*." *Id.* at 4:51–57 (emphasis added).

- "For example, the first electronic device 20 can be a ***personal computer (e.g., laptop, notebook)*** that is ***running a web browser program (e.g., Internet Explorer®, Firefox®, Safari®)*** to access or visit websites hosted by one or more computers 50 (e.g., computer 1, computer 2, computer 3, . . . , computer M) via the network 40, or can be a mobile device (e.g., smartphone or tablet) that is running an application that accesses or visits websites hosted by the one or more computers 50 via the network 40, and the second electronic device 30 can be a mobile device (e.g., smartphone or tablet) that is running an application that accesses the network 40." *Id.* at 5:8–18 (emphasis added).

- "A verification server 60 ***(e.g., a computing device that can authorize a connection or a validation attempt)*** is also operatively coupled to the network 40 as is described more fully herein." *Id.* at 5:24-26(emphasis added).

- "The hardware used for certain embodiments described herein (e.g., the first electronic devices 20, the second electronic devices 30, the computers 50, and the validation server 60) can take ***a wide variety of forms, including processors, general-purpose computers, network servers, workstations, personal computers, mainframe computers and the like***." *Id.* at 5:36–42 (emphasis added).

- "The hardware running the software will typically include one or more input devices, such as ***a mouse, trackball, touchpad, and/or keyboard, a display, and computer-readable memory media, such as random-access memory (RAM) integrated circuits and a data storage device (e.g., tangible storage, non-transitory storage, flash memory, hard-disk drive)***." *Id.* at 5:42-48 (emphasis added).

- "[A] user 10 can use the second electronic device 30 (e.g., a computer with a user browser running a browser window viewed on a display device) to view content provided by the computer 50 (e.g., web server) with the intention of conducting an interaction with ***a secured capability of the computer, such as entering into a secure environment or website (e.g., to access secure information or sensitive information) or making a payment as part of an ecommerce transaction***." *Id.* at 6:5-13 (emphasis added).

- "In certain embodiments, the secured capability can comprise ***a structure (e.g., a locked door, fence, gate, elevator)***." *Id.* at 8:26-27 (emphasis added).

- "For example, the reusable identifier 214 can include ***a short sequence of numbers, letters, or characters*** that identifies the company providing the secured capability, the secured capability, or both." *Id.* at 8:58-61 (emphasis added).

4

- "[T]he method 400 further comprises using *a processor (e.g., of an electronic device 20 being used by the user, examples of which include but are not limited to a mobile device, a smartphone, and a tablet)*." *Id.* at 15:62-66 (emphasis added).

Accordingly, the alleged invention requires only use of generic devices and technologies used for their conventional purposes.

## V.    LEGAL STANDARD

### A.    This Case Should Be Dismissed Under Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e

perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### B.    The Law of 35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Alice*, 134 S. Ct. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—

6

such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## VI.    ARGUMENT

### A.    Claim 1 of the '116 Patent Is Representative of All Claims.

The Court should treat claim 1 of the '116 Patent as representative of all claims of the '116 Patent for purposes of the § 101 analysis. Where claims are "substantially similar and linked to the same" ineligible concept, it is proper to treat a single claim as representative. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (internal quotation marks omitted); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Secure Matrix itself treats claim 1 of the '116 Patent as exemplary in the claim chart attached to its Complaint. *See* Compl., Ex. 2. The '116 Patent has 22 claims, three of which are independent. Each of the claims of the '116 Patent are substantially similar.

The independent claims describe generally a system for authentication. *See* '116 Patent, cl. 1. Independent claim 11 merely describes a system for implementing the method described in claim 1, and independent claim 20 is virtually identical to claim 1 except for its "non-transitory computer storage" preamble. '116 Patent, cl. 11 (system), cl. 20 ("non-transitory computer storage").

The dependent claims add only pre- or post-solution activity and do not change the analysis under § 101:

| Pre- or Post-Solution Activity | Claims |
|---|---|
| The reusable identifier does not contain user- or interaction-specific information | 2, 16 |
| Presenting the reusable identifier as an encoded visual or auditory identifier (e.g., QR codes) | 3-4 |
| Opening a physical lock | 5 |
| Accessing a secured internet portal | 6 |
| Making a purchase | 7-8, 17-19 |
| Presenting the reusable identifier on a printed page | 9 |
| Basing evaluation of authentication on a time differential | 10, 13 |
| Evaluating whether user is verified | 12, 15 |
| Identifying secured capability based on first association and reusable identifier | 14 |
| Computer system provides secured capability | 21, 22 |

None of these limitations causes any dependent claim to be materially different from representative claim 1, as none of the limitations is directed to any specialized components or organization of limitations giving rise to an inventive concept. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016) ("[A]ppending preexisting practice[s] to [] independent claims does not make them patentable."). Like the claim limitations in the representative claim 1 of the '116 Patent, the additional limitations do not alter the § 101 analysis. Claim 1 is thus representative. *See PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No. 2:18-cv-00007-JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (articulating that defendants first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff to identify a difference material to the § 101 analysis); *see also Content Extraction*, 776 F.3d at 1348; *Phoenix Licensing, L.L.C. v. Consumer*

*Cellular, Inc.*, 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017).Thus, the Court may treat claim 1 of the '116 Patent as representative in resolving the § 101 inquiry. *See Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, No. 2020-2320, 2021 WL 2944838 (Fed. Cir. July 14, 2021) (affirming district court's invalidation of 25 asserted claims, treating one claim as representative); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative" where there is no "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim.").

**B.    *Alice* Step One: Claim 1 of the '116 Patent Is Directed to the Abstract Idea of Authentication.**

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the '116 Patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of authentication. *See Alice*, 134 S. Ct. at 2356–59; *Bilski*, 561 U.S. at 611.

In assessing whether Claim 1 is directed to an abstract idea, the Court begins by analyzing the "focus" of the claim, *i.e.*, its "character as a whole," to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). All claim 1 of the '116 Patent covers is routine authentication:

| Claim Language | Claimed Idea |
|---|---|
| 1. A method of using a computer system to authenticate a user seeking to conduct at least one interaction with a secured capability provided by a computer, the method comprising: | Authenticating a user |
| using the computer system to receive a first signal from the computer providing the secured capability, the first signal comprising a reusable identifier corresponding to the secured capability, the reusable identifier assigned for use by the secured capability for a finite period of time; | Receiving data |

| using the computer system to receive a second signal from an electronic device being used by the user, the second signal comprising a copy of the reusable identifier and user verification information; | Receiving data |
|---|---|
| using a processor of the computer system to evaluate, based at least on the first signal and the second signal, whether the user is authorized to conduct the at least one interaction with the secured capability; and | Evaluating data |
| in response to an indication from the processor that the user is authorized to conduct the at least one interaction with the secured capability, using the computer system to transmit a third signal comprising authorization information to at least one of the electronic device and the computer. | Transmitting data |

Claim 1 describes the most generic functional steps of a standard computer (*i.e.*, receiving, evaluating, and transmitting data). Such a broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715. That the claim purports to implement the steps with conventional components like a "computer system," a "reusable identifier," an "electronic device," and a "processor" does not make claim 1 any less abstract.

The Federal Circuit has repeatedly held invalid patents that claim conventional authentication. Indeed, that asserted claims are like those in *Prism*, where the Federal Circuit affirmed the district court's conclusion that "the asserted claims are directed to the abstract idea of 'providing restricted access to resources.'" 696 Fed. at 1017 (Fed. Cir. 2017). More specifically, the court held that "the asserted claims are directed to an abstract process that includes: (1) receiving identity data from a device with a request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources." *Id.*

Similarly, the asserted claims are like those in *Universal Registry*, where the court cautioned that, "[i]n cases involving authentication technology, patent eligibility often turns on whether the claims provide sufficient specificity to constitute an improvement to computer

10

functionality itself." 10 F.4th at 1346. There, the court affirmed the ineligibility of claims "directed to a method for verifying the identity of a user to facilitate an economic transaction, for which computers are merely used in a conventional way, rather than a technological improvement to computer functionality itself." *Id.* at 1350.

The Federal Circuit has reached similar conclusions in cases involving claims, like that asserted claims here, directed to routine authentication. *See, e.g.*, *Riggs Tech. Holdings, LLC v Cengage Learning, Inc.*, No. 2022-1468, 2023 WL 193162, at *1 (Fed. Cir. Jan. 17, 2023) (affirming claims held ineligible, which recited a limitation of "authenticating the identify [sic] of the user . . . by requesting authentication data from the user and comparing the authentication data with a master user identification template containing authentication data associated with the user"); *Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 2021-1906, 2022 WL794981, at *2 (Fed. Cir. 2022) (affirming as abstract and ineligible claims directed to "the abstract idea of credentialing visitors and checking them in and out of an access-controlled environment"); *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1181 (Fed. Cir. 2020) (finding abstract claims including limitations for "enabling a first party to input authentication information, storing the authentication information, and providing the authentication information"); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 Fed. App'x 529, 531 (Fed. Cir. 2020) (affirming ineligibility of claims found by the district court as "directed to "(1) associating a security level with a data resource, (2) associating a security level with a mode of identification of a user, and then (3) ensuring that the user's security level is sufficiently high to meet the security level of the data resource to access the data resource"). While Secure Matrix may attempt to tout the importance of the claimed "reusable identifier," the specification concedes that such an identifier is merely "***a***

*short sequence of numbers, letters, or characters* that identifies the company providing the secured capability, the secured capability, or both." '116 Patent at 8:58-61 (emphasis added).

Claim 1 differs from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "Improving security—here, against a computer's unauthorized use of a program—can be a non-abstract computer-functionality improvement . . . done by a specific technique that departs from earlier approaches to solve a specific computer problem." *Id.* at 1348. The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of Claim 1 of the '116 Patent. It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.

Claim 1 also uses result-based functional language to describe its method in an abstract way. For example, claim 1 uses language like "receive," "evaluate," and "transmit," without describing how those steps are carried out. Such claim language is a hallmark of a patent whose claims are directed to an abstract idea. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (Claim 1 recites a method for routing information using result-based functional language. The claim requires the functional results of "converting," "routing," "controlling," "monitoring," and "accumulating records," but does not sufficiently describe how to achieve these results in a non-abstract way."). By only claiming the desired

result—authentication—without providing any specificity for doing so, claim 1 of the '116 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015); *Secured Mail*, 873 F.3d at 910–11. The claims of the '116 Patent are directed to an abstract idea.

### C.    *Alice* **Step Two: Claim 1 Contains No Inventive Concept.**

Claim 1 does not contain an inventive concept that amounted to significantly more than the abstract idea itself—something sufficient "to **transform** the claimed abstract idea into a patent-eligible invention." *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021) (emphasis added); *see also BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). There is no "inventive concept" where the claim recites "well-understood, routine, conventional activit[ies] previously known to the industry." *Alice*, 573 U.S. at 225.

Claim 1 lacks an inventive concept because it relies on conventional methods and routine operations already widely used. The '116 Patent's specification describes the use of generic components in carrying out the steps in Claim 1. For example, the specification explains that the method can be carried out on "websites and smartphones" or even "bank safes, door locks, and any other objects that use some form of security to access, and other forms of mobile personal devices (e.g., electronic tablets)." '116 Patent at 4:51–57. The claimed "electronic device" can "take a wide variety of forms, including processors, general-purpose computers, network servers, workstations, personal computers, mainframe computers and the like." *Id.* at 5:36-42. The claimed "processor" is simply "a processor (e.g., of an electronic device . . . being used by the user, examples of which include but are not limited to a mobile device, a smartphone, and a tablet)." *Id.* at 15:32–66. Further, the claimed "secured capability" can comprise "entering into a secure environment or website (e.g., to access secure information or sensitive information) or making a payment as part of an ecommerce transaction." *Id.* at 6:5-13. Finally, the "reusable identifier" is

13

merely "a short sequence of numbers, letters, or characters that identifies the company providing the secured capability, the secured capability, or both." *Id.* at 8:58-61. In essence, the '116 Patent takes the abstract idea described above—authentication—and applies it using generic computer components and conventional methods. The arranging of these conventional components does not amount to "significantly more" than the abstract idea itself. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1320 (Fed. Cir. 2016). Considered either individually or as an ordered combination, claim 1 contains no inventive concept. Claim 1 describes (1) receiving data; (2) evaluating data; and (3) transmitting data to authenticate a user. '116 Patent, cl. 1. These are well-known, routine functions of a computer, and of communication.

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in claim 1 of the '116 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."); *Bancorp*, 687 F.3d at 1276–77. In addition, an "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as [mobile services]." *Intellectual Ventures I LLC v. Capital One Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

The other claims of the '116 Patent include similar limitations regarding the abstract idea, but they do not include the specificity necessary to claim patent-eligible subject matter. They also do not include anything other than generic components and processes such that they fail to contain

an inventive concept. Accordingly, the other claims suffer from the same flaws as claim 1 of the '116 Patent. These claims also do not contain any inventive concept amounting to "significantly more" than the abstract idea. They do not inject any unconventional computer components or techniques. The claims simply apply the same abstract concept of authentication, and the Federal Circuit has been clear that the abstract idea itself cannot confer an inventive concept. *See BSG Tech*, 899 F.3d at 1290 ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

Because the claims of the '116 Patent are altogether devoid of any "inventive concept," they are patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359–60.

### D. There Are No Claim Construction or Factual Disputes Preventing the Court From Ruling on This Issue at the Rule 12 Stage

The issue of the patent eligibility is ready for the Court's consideration because there are no factual or claim construction issues. There are no claim construction issues affecting the *Alice* analysis, as Secure Matrix has not proposed any constructions of the claim terms that would alter the ineligibility of the claims. Additionally, there are no factual disputes on this record. The '116 Patent does not assert any unconventional mechanism of implementing the claimed idea, and the Complaint does not allege any facts to support inventive concepts or unconventional use of known components to implement the concept.

Additionally, there are no factual disputes on this record. The '116 Patent does not assert any unconventional mechanism of implementing the claimed idea, and the Complaint does not allege *any* facts to support inventive concepts or unconventional use of known components to implement the concept. The difference between Secure Matrix' Original Complaint and First Amended Complaint are clear. Specifically, Secure Matrix added 14 new paragraphs in its First

Amended Complaint (paragraphs 10-23), which attempt to overcome the claims' ineligibility. They do not. Largely, Secure Matrix quotes the specification in ways that highlight the claims' ineligibility. After describing the prior art in paragraphs 10-12, Secure Matrix alleges that the '116 Patent overcame the prior art by "providing computer systems and methods for 'authenticating a user seeking to conduct at least one interaction with a secured capability.'" First Am. Compl., ¶ 13 (quoting '116 Patent at 1:29-31).

Next, Secure Matrix merely repeats the claim language from claim 1 (¶¶ 13-14, 22), touts the claims' novelty (¶¶ 15-17), and states that the claimed method was not previously performed by humans or capable of being performed in the human mind (¶ 23). In paragraphs 18-21, Secure Matrix touts purported benefits of practicing the abstract idea, including "efficien[cy]," "sparing computer system resources," "the assignment of the reusable identifier 'for a finite period of time,'" and "enhanc[ed] security and … user convenience." These allegations further reveal that "[t]he claims here are ineligible because their innovation is an innovation in ineligible subject matter." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018). When faced with the question—"[w]hat else is there in the claims before us?"—the answer is clear: "not much." *PersonalWeb Techs. LLC. v. Google LLC*, 8 F.4th 1310, 1319 (Fed. Cir. 2021) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012). At bottom, none of these allegations provide a factual dispute about the eligibility of the claims. Taking all of Secure Matrix's new allegations as true, the abstract, unspecific nature of the claims is amplified.

This case is markedly different from *Berkheimer* and the line of cases where factual issues have been found to exist in *Alice* Step Two. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The court

added that "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities . . . so we must analyze the asserted claims and determine whether they capture these improvements." *Id.* After finding that some claims "contain limitations directed to the arguably unconventional inventive concept described in the specification," the court held that there was a question of fact as to whether those claims perform "well-understood, routine, and conventional activities." *Id.* at 1370. It should be noted, however, that "[t]he *Berkheimer* [] cases do not stand for the proposition that a plaintiff can avoid dismissal simply by reciting in the complaint that the invention at issue is novel and that the inventive concept resides in the abstract idea itself." *First-Class Monitoring, LLC v. Ups of Am., Inc.*, 389 F. Supp. 3d 456, 471 (E.D. Tex. 2019) (emphasis added). Furthermore, "[a]ny allegation about inventiveness, wholly divorced from the claims or the specification, does not defeat a motion to dismiss; only plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Dropbox*, 815 F. App'x at 538 (Fed. Cir. 2020) (internal quotations omitted).

Accordingly, Defendant's motion is ripe for the Court's consideration.

## VII.    CONCLUSION

For the reasons above, Defendant respectfully requests that the Court grant this motion and enter judgment in favor of Defendant. Because leave to amend would be futile, Defendant requests dismissal with prejudice.

Dated: April 15, 2025                      Respectfully submitted,

By: */s/ Lance E. Wyatt*
    Neil J. McNabnay
    Texas Bar No. 24002583
    mcnabnay@fr.com
    Lance E. Wyatt
    Texas Bar No. 24093397
    wyatt@fr.com
    **FISH & RICHARDSON P.C.**
    1717 Main Street, Suite 5000
    Dallas, Texas 75201
    Telephone (214) 747-5070
    Facsimile (214) 747-2091

**COUNSEL FOR DEFENDANT**
**COBURN SUPPLY COMPANY, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 15, 2025 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Lance E. Wyatt*
Lance E. Wyatt

18